Okay, the next argued case is number 19-1808, Voip-Pal.com, Inc. v. Twitter, Inc. Mr. Hudnell. Good morning, Your Honors. Mr. Hudnell, I see your name on the amicus brief, not on the blue brief. That's correct, Your Honor. At the time the amicus brief was filed, I submitted the amicus brief several months later of Voip-Pal Switched Counsel, and they engaged me to represent them in this appeal four or five months after the amicus brief was filed. Because we don't normally have amici argue, and I didn't recall a motion permitting amici to argue, but you're now representing an appellant. I am representing an appellant, yes, and may I please the Court. Your Honors, in this appeal, Voip-Pal asked the Court to reverse the district court's order dismissing its third amended complaint because the district court erroneously determined that Voip-Pal failed to plausibly allege that the asserted claims of the two patents in this case recite patentable eligible subject matter. And if we look at the third amended complaint, which is in the appendix at 1333, and specifically beginning with paragraphs 7 through 16, which run on pages 1335 through 1340. In these paragraphs, Voip-Pal presents detailed factional allegations as to why the claims asserted both improve upon the prior art and recite an inventive concept. And one of the things that's detailed in these passages. Let's look at the claims. You have two claims, one from the 815 patent and one from the 005. And looking at Claim 1 of 815, it consists of passing information back and forth, receiving a caller identifier, locating a profile, determining a match, classifying the call, producing a message. This is all abstract. We would disagree that, Your Honor, respectfully, that the claims are abstract because they recite a sufficiently specific improvement over the prior art. And that says... But if they do so using abstract language, whether they're non-obvious or brilliant isn't the point. The point is whether the claims are limited to abstract method limitations. Yes, Your Honor. And I think what's key here, and where I was going with this discussion, is the recent KPN case, which this court decided and we submitted through a notice of supplemental authority. And in that case, what you had was similar data. It was media being passed back and forth between devices, data. And the limitations recited such things as capturing data, transmitting data between the devices. And what happened in KPN is that the court said, well... This court said, well, that may be, the claim does involve data and we don't dispute that this claim involves data, but it's not directed to the data. It's not claiming data. Where is the improvement? Right. So... That's what... You're saying it's not targeted toward the abstract idea of gathering data. It's targeted toward the improvement, computer improvement about what you do with that data. But where does that show up in the specification or the written description? In the written description or the claims? Because I could... Well, both. Okay. So... The claim is what counts. Right. I'll start with the claim, Your Honor. So in order to understand the improvement, it's important to understand what the prior art did. Okay. The prior art, there's two types of prior art that we described in the First and Third Amendment complaint for call routing. One was PSTN notes, public telephone notes. What they did is they routed calls solely based on the number that was dialed. So if your number is 917-861-3494, it's going to take that number and route the call to the public network. Okay. The second type of node that we described in the Third Amendment complaint are private network nodes. We have a private phone system within an organization. Now those systems had to, one, make a decision whether when you dial the number, whether that number was within the private network and it could route the call there, or whether that number was on the public network and it had to place the call on the public network. In order for the call to get to the public network, the user had to take an affirmative step and dial a 9 conventionally to get to the public network. Now where the improvement is in these, and I should say with respect to PBX nodes, again, the routing was solely based on the number that was dialed. Where the improvement is in these claims is that the routing is based on the number dialed plus information about the caller, and you can see that in the limitation. So if we look at 815 Claim 1, the locating limitation locates a caller dialing profile. That profile has certain attributes about the caller in the profile. In the next step, determining a match, when at least one of the... Does it locate it through a physical process or through software? The movement of data, information? It's looking the profile up in a database. In other words, the improvement is represented and described by an abstraction. Well... It's abstraction on abstraction. I respectfully disagree because there's another step here, Your Honor. And that is, once you have the profile of the caller, then you have to evaluate the attributes in that profile against the number that was dialed, the callee's phone number, in order to make a determination how you're going to route the call, whether the call is going to go to the public network or whether the call is to the private network. The closest you come is right at the end where, in Claim 1, you talk about producing a public network routing message for receipt by the call controller. But you don't... There's nothing that explains how that's done or what type of technology is used to accomplish that. I don't... I mean, I don't see where you have... My problem is getting rid of dialing 9 is great. So that's wonderful. I just don't see where you've claimed that. Well... There's sort of two issues wrapped up in your question, Your Honor. First, with respect to dialing the 9. The claim here is not... It's too simplistic to look at this claim. I mean, it covers the situation where you don't have to dial the 9, meaning if I dial a number using this claim, it's going to route the call based on not only the number that I dialed, but information about... That comes from my profile. And so it's not simply replacing dialing 9. It's completely eliminating that. It's taking that control from me as the user of this system. It's taking that control away and then providing additional functionality that didn't exist in these prior art notes. But do you claim the classification criteria that's used to make these distinctions? Yes. Yes, we do, Your Honor. In fact... Where? So one example of the classification criteria appears in Claim 12, which recites, where in classifying a call as a private network call, when said reformatted callee identifier identifies a subscriber to the private network. So essentially what happens in this claim is that in this step, in this step we're worried... But there was... The only thing that even close to... The only argument that's even close to having been made that the district court was directed to any claim other than the representative claims that she identified had to do with Claim 28. Where did you identify Claim 12 as something that needs to be independently analyzed? I'm not... I'm not certain if it was. I could take a look at the brief when I sit down for rebuttal to find it, see if we separately identified Claim 12. But the point is, Your Honor, is that the classification criteria is there in Claim 12. Now back to your question about the how issue, how this claim accomplishes its task. I think it's important to go back to where I was with the KPN case. The KPN case says that the how question is answered at the level, what is the desired goal of the claim? And have you recited sufficiently specific steps to achieve that goal? And so here, when you were asking Judge O'Malley about the classification step, that is merely one step of achieving the overall goal. And KPN draws that line at the desired goal. Here, being routing the caller, routing the call with information from the caller and the callee, but it gives you the specific steps that you take to do that. You have to find the profile. You have to compare it to the callee's phone number that you dialed. You have to determine if there's a match, meaning that there's a number in the system that the system recognizes, that it can actually make a determination on whether I'm going to route this call to the private network or to the public network. All of which consists of a computer comparing data, right? The claim is performed by a computer, but it's an improvement over what existed before in the prior art. The prior art was computerized too. PBX is... In other words, abstract over abstract. What's abstract to begin with isn't necessarily non-abstract if it is improved on by abstractions, by comparing data. Again, Your Honor, I respectfully disagree that the claims are directed to data, but even if the claims were directed to... We still believe that we satisfy the second step, the second prong of the Alice test, which is that the claims recite the inventive concept of transparently routing calls in a user-specific manner. And the most critical error that the district court made in this case is that if you look at the analysis of Step 2, which appears at APPX 34 through 38 and 43 through 46 for the second patent, the district court never considered the allegations in the Third Amendment complaint where we plausibly allege that the method, the methodology, the specific steps recited in the claim were unconventional at the time. Again, remember where I started. PBXs, I'm sorry, PSTN nodes, routes only based on the... It was conventional, only to route based on the number that's actually dialed. PBXs, private calls, routed only based on the numbers dialed. Here, what this claim lays out is specific steps for routing the call based on not only the number that's dialed but also information about me as the caller to make a determination of whether I go to the public network or the private network. And with those allegations that the district court didn't consider, it's Voight-Powell's position that this matter should be reversed under the precedent that this court has set in ATRIX, in CELSPN, in BASCOM, where there were plausible allegations and there was nothing in the record to refute them, specifically at step two, which is inherently a factual inquiry. Let's save your time for rebuttal. I'll save the rest of my time for rebuttal. Thank you. Mr. Perry. Thank you, Judge Newman, and may it please the court. Judge O'Malley, you asked my friend, where is the improvement? And he said, and I quote, routing based on the number dialed plus information about the caller, end quote. That is the abstract idea found by the district court, and I quote at appendix 25, routing a call based on characteristics of the caller and colleague. We agree that the claim recites that and nothing more than that. And when we focus on the claim language, we have here at step one, nothing but an information management claim. Data comes in, phone numbers, which the specification says all these identifiers and attributes are phone numbers, and data comes out, a routing message. And in between is a black box that contains matching criteria and classification criteria that are not claimed, that are not described, and that are not anywhere disclosed to the world. So that when my friend told you... There's a computer system that can do X, and then the system says, but I can add to that, I can tweak that, I can make it do Y in a much better way. Why isn't this similar to that? Well, two reasons, Your Honor. First is, this is a generic module. This is software programming. There is no hardware. Remember in DDR, we actually had the filtering machine was placed on the network, and one of the claims described in the written description was the physical location of the filtering machine on the network. That was different, right? Here, though... Excuse me, that was Baskin. In DDR, the workings of the hyperlink was changed from the way it would ordinarily work. And this goes to one of your other questions about not dialing nine would be great. Mr. Hudnell says this would, quote, cover the situation where you don't dial nine, end quote. I don't know if that's true, but we know it would also cover the situation where you do dial nine. Because if the classification criterion was if you dial nine, you route it to the PSTN, that would meet all the limitations of this claim. It doesn't invent anything. Whereas DDR and Baskin, those claims change the ordinary operation of a network in a way that had never been seen before. And that is not claimed here, and it's not in the specification, which is why to jump to the end of the story, I suppose, I'll go to where Mr. Hudnell started, which is with the complaint. You know, we've heard very little in this case about the claims, because the claim, claim one is absolutely abstract and contains no inventive concept. The written description, the specification gets almost no play. They want to go to the complaint. This was decided based on the pleadings. Absolutely, Your Honor. So, I mean, why don't we have the cell spin problem? Well, cell spin is the best case for us, we think. Because cell spin says, and let me get the quote exactly right. This is 927F3rd at page 1317. What makes the claim inventive must be recited by the claims. That's a direct quote from cell spin. And that's what we don't have here. Of course the complaint can add allegations about what's routine, well understood and conventional, once you have something inventive recited in the patent. What the complaint cannot do is create an invention. Patents create inventions. Patents claim. Claims claim, right? And the written description describes. The complaint cannot satisfy step two. The complaint can satisfy the routine, well understood and conventional step, but we don't get there in this case. And Judge Koh didn't get there in this case because at step one it clearly is abstract and at step two, no inventive concept is claimed. And if there's no claimed inventive concept we don't ever get to the question of conventionality. What do we do with the fact that on IPR the board thought this wasn't obvious at least? Well, Your Honor. Doesn't that imply some inventiveness? No, Your Honor. Well, we think that's wrong. Of course, that appeal is pending in this court and Apple is challenging that. And this court has many cases. Salyutran, for example, where a previous board determination of obviousness is not determinative of eligibility. Judge Newman has written opinions on this very subject, of course. And they are, have taken separate paths in the jurisprudence and this one has to be evaluated under the 101 standards and it fails every which way. I mean, there's not a precedent in which a claim drawn to this level of abstraction with no inventive concept disclosed anywhere in the four corners of the patent could survive, which is why Voight-Powell wants to talk about the complaint but the complaint can't get over the failure in the claim. Should there have been a construction of the claim? Your Honor, if Voight-Powell had asked for a construction, yes. But they didn't. And let's be very clear about what happened here because it's a little bit misleading, I believe, in the appellate briefs. Voight-Powell pointed to claim 28, the means plus function claim, and did not ask that it be construed. And I think this is important because what Voight-Powell did not say that it is limited to the structure or the specification, that it's restricted in any way, right? They just said in the opposition that claim 28 and figures 8A to 8D was an example of non-abstractness at step one. That's not true on its own face if you look at, for example, the means for locating step of claim 28. Voight-Powell tells us the corresponding figure is box 258 of figure 8A, which says look up the dialer profile. And it just repeats the same generic element. But more importantly, Voight-Powell did not ask the court to construe that claim and did not ask the court to construe any other claim. There is a stray half sentence on page appendix 1325 near the very end of their opposition to the motion to dismiss that says not only is claim construction required, and then it goes on to discuss something else. No claim is identified, no claim limitation is identified, no dispute is identified, and most importantly, Judge O'Malley, Voight-Powell has never said to the district court or this court what limitation, if construed in Voight-Powell's favor, would change the 101 analysis. And under my mail, that's the question for claim construction, right? If it doesn't matter for 101, we don't need to construe the claims. It's only if they have a 101 determination. The key one I would submit, you know, the key claim limitation would be the classifying step, right? The classifying criteria, which are not described, which are not claimed in any specificity, which are not described in the specification, there's a reason for that. There's no amount of claim construction can remedy the complete black box nature of that aspect of this claimed method. And so that while, of course, of course a district court should construe claims upon request, either construe them or adopt the patentee's construction, as my mail says, it is the patentee's obligation to put forward a disputed limitation and explain why it matters for the 101 structure and this patentee. What about the producing a public network routing message for receipt by the call controller? Well, again, they didn't ask that that be construed, and the only aspect of it, you know, producing the routing message is just data, or you know, sending the data. Whether it's a public routing message or a private routing message, which are the last two elements of the claim, is an output of the classification criteria. It says classifying the criteria as public or private depending on the criteria, and then you just produce a message that follows the classification. That, you know, we come back to the same black box problem that the classification criteria are never disclosed, are never described. One doesn't know how this invention is practiced. This, by the way, is what defeats the claim, the suggestion that something called user-specific calling is claimed. It's not. We don't dispute, nobody has ever disputed, that information about the caller is described in the first element of the claim, but nothing about this claim requires any user specificity whatsoever. If the classification criteria were every number from the 202 area code gets routed in a particular way, that would be a classification criterion. It would have nothing to do with the user. You know, there's seven plus million phone numbers in the 202 area code. We don't have any teaching, we don't have any claim limitations, and we don't have any teaching in the specification about that user specificity. Dial 9, the only specific example I already mentioned, the claim equally reads on a system in which you do have to dial 9 to get out of your private exchange and onto the public network. So that there's nothing specific or concrete. So are you saying that even if 101 weren't a problem, this would be a problem under 112? This would have a problem under 112 and 103, but 112 certainly in the way that they're trying to the complaint allegations paragraphs 12 and 13 are describing inventions that are they're describing aspects that are not claimed, benefits that are not claimed. And to be clear, my point is a method according to Claim 1 might have those benefits, but it might not. They're not required by a method according to Claim 1, which is why Voight-Powell in his briefing has been very careful to use words like encompass or embody. They never say that Claim 1 is limited to user-specific calling or transparent routing. And this court in Berkheimer made this point extremely clear. Remember at the end of Berkheimer the court said that the independent claim 1 was ineligible, but the dependent claim 4 and 5 may be eligible. The dependent claims had to be encompassed by the independent claim. That's black letter law. So it's not enough that it's encompassed. It has to be claimed. It has to be limited. And this goes all the way back to Mayo. The whole two-step framework is based on what is claimed. The first step you evaluate the claim. The second step you evaluate the claim. You only get to the complaint when you get to well-understood, routine, and conventional. And so that all of these arguments that have been presented in this case ignore the claim language because the claim language which Judge Koh dealt with, every limitation, every word is addressed in her opinion all established under DDR and everything else that this is an abstract claim. Was there ever a request of Judge Koh to construe or address claims 12 or 28 differently? Claim 12 has never come up to my knowledge. Claim 28, the only way Claim 28 came up, Your Honor, it's in the appendix of pages 1315 to 1316 which is Voight-Powell's opposition to the motion to dismiss and footnote 13 by the way. And what Voight-Powell said and I'm quoting defendant and so it's a step one argument defendant's assertion that the claims are directed to an abstract idea is even less plausible for means plus function claims such as the apparatus in Claim 28 of the 815. And then it goes on to say means would be interpreted under 112.6 to pick up the corresponding structures. That's true if they'd asked for that construction. Of course they don't tell us which corresponding structures. And then in footnote 13 Voight-Powell ties out the limitations the means limitations in Claim 8 to 10 of the 53 boxes disclosed in figures 8A through 8D. They don't tell us whether the other 43 are limiting. They don't tell us whether the other 43 do anything. And as I've said the actual tie out to my mind doesn't doesn't doesn't change the analysis. Footnote 13 says for example means for locating a caller dialing profile is block 254. Block 254 is get dialing profile for caller. So you know means plus structure means the structure actually has to do something. It has to teach a person of skill in the art how to accomplish the means. Repeating the means in a block diagram in a logic flow diagram doesn't get you there even under 112.6. The only point of that Judge O'Malley is if they had actually asked for a 112.6 construction we would have had a go around about which are limiting which are which are enabling you know what satisfies description requirement and so forth and whether a person of skill in the art could have actually programmed a computer based on the logic flows presented in figures 8A through 8D. I think that's an open question. It was never resolved here because VoIPAL didn't ask for it and certainly as the issue before this court it's irrelevant because they never have said that there's a factual inquiry. Your Honor Judge Lurie you asked about the amicus brief Mr. Hudnell represented VoIPAL at the time he wrote that amicus brief too and I think VoIPAL is fairly charged with the things in that amicus brief. I think they sort of give the game away there. They say step 2 always requires a factual inquiry that's pages 7 and 8 and that the complaint can create a fact question about what the inventive concept is that's pages 5 and 6. The court would be making dramatic new law if it accepted either of those suggestions. I think it's flat wrong under Mayo and Alice both of which direct us to the claims and the fact that that's the extent to which they have to go on their argument shows that they're so far from the patent. I would ask the court to return to the claims in particular the representative claims which Judge Coe identified which VoIPAL did not dispute below claim one of the 815 that the patent is directed Was that really the point that was being made or was the point more what Berkheimer and Selzman say which is that the question of whether something was routine or known or ordinary is a question of fact and you have to accept all allegations and the complaint on that topic is true. And on that Your Honor there is no disagreement with anybody in this courtroom I don't think. That is the law under Berkheimer and Atrix for the motion to dismiss stage Selzman applied that but that goes to after we identify an abstract idea so it fails step one and after we identify in the claim an inventive concept that Amdocs by the way tells us has to be supported in the specification then we get to the third question if you will and that's so the Berkheimer question there may be an inventive concept then the question is was it well understood routine and conventional that is the only factual question on which any of these cases have been remanded and that the allegations must be plausible and must be credited we never got to that point in this case and we don't ever need to get to that point in this case because this clearly doesn't answer the question and we never do that in this case I see my time has expired unless the court has further questions thank you your honor thank you Mr. Hudden thank you your honors so my friend in the beginning of his time indicated they think cell spin is a good case for their side we think cell spin is a good case for our side and what you've heard in addition to having a cell spin problem we believe that the appeals have a my mail problem and what you've heard consistently throughout my friend's discussion is the fact that the claims don't claim what we say that they claim and that's a claim construction issue there is clearly a dispute whether the improvements of user specific calling and transparent routing are recited in the court those allegations that it is recited so looking at claim one so what claim constructions did you ask for well your honor I mean this was dismissed at the rule 12 stage we in our brief we did not we did not we made a request for claim construction we argued that this decision was premature in the absence of claim construction but we didn't turn our opposition to their motion to dismiss into a claim construction brief but you know the problem is you've got a district court judge who says well it doesn't really turn on claims construction you ought to at least give me a couple claims or a couple terms that you want construed and your honor I mean we think that that even on a plain plain language basis the claims recite the improvements that we alleged in the third amended complaint so for example in claim one the limitation locating a caller profile comprising a user name and attributes associated with caller those elements those limitations are all directed to the user and the routing is based on on both like I said earlier the routing is based on both the number that's dialed and the attributes of the caller so just just looking at the plain language it's you know it's it's that feature is recited and for the for the district court to say it's not there well we've got a claim construction issue and on top of that what the case law says what my mail says is that if we allege that the claims cover a certain feature she either needs to accept our allegation as true or conduct a claim intercession or resolve the dispute and clearly appellees are disputing that the claim covers this feature and we say that it does that's that's evident throughout the brief so there needed to be a resolution of that or a construction put there and there was no construction one other thing that my friend indicated is that about one other thing that my friend said was that the benefits have not been claimed well we know from again from salesman that that is not the test the benefits don't actually need to be in the claim we've we've alleged the benefit we've we show as I just analyzed we've showed where that recited but there's no necessary requirement that that all the benefits all the features that this system provides be recited in the claim that's not that's not a proper claim draft you have the last word yes your honor just wanted to go back to the this notion that my friend raised that the claim is again just about data and I think one case that's also instructive here is the BASCOM case because in the BASCOM case you had the with respect to inventive concept you had the recitation of putting a filter at an ISP that was one of the things that was found inventive non-routine and conventional in BASCOM but in addition in BASCOM what BASCOM said was inventive was having a filtering tool with customizable filtering features specific to each user verification of registered subscribers associating individual accounts with their own filtering scheme versatile so they can be adapted to user preferences that's what we've claimed here and I just went through the limitations that capture that in this claim so and that was unconventional not routine and not well understood in prior art as based on my previous discussion so we even think under BASCOM just further emphasizes here that the allegations in the complaint which are captured by the claims or at least would be captured by the claims if the court had done a proper claim construction established that there's nothing in the record that refutes those allegations or refutes them with clear and convincing evidence to the extent that standard applies and we would ask on that basis that the court reverse the district court's order of dismissing this case at the Rule 12 stage. Thank you. Thank you. Thank you both. The case is taken under submission.